No. 39,616

CHARLES S. ANDREWS and FRANCES E. ANDREWS, *Appellees*, v. BILL L. VAUGHAN and IRMA C. VAUGHAN, his wife, *Appellants*.

(282 P. 2d 387)

Opinion filed April 9, 1955.

*Forrest A. Jackson* and *Geo. K. Melvin*, both of Lawrence, argued the cause and were on the briefs for the appellants.

*Henry H. Asher*, of Lawrence, argued the cause, and *Richard A. Barber* and *Robert F. Ellsworth*, both of Lawrence, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This was an action on a written contract for the sale of real estate, seeking to have the balance due adjudicated, and also for an adjudication of the amount due for materials and supplies used in the construction of a residence property. Following a trial by the court judgment was rendered for plaintiffs, and defendants have appealed.

The trial court made findings of fact. No contention is made that they are not supported by the evidence, and we either summarize or quote them.

On a date not shown, defendant Bill L. Vaughan entered into a contract with one Ward for the purchase of four lots in the city of Lawrence for the sum of $612, payable at the rate of $12 per month. Subsequent thereto, and on August 2, 1945, defendants Bill L. Vaughan and his wife, Irma C. Vaughan, delivered their written statement to Walter H. Andrews, doing business as Shaw Lumber Company, as follows:

"County of Douglas, City of Lawrence, State of Kansas, August 2, 1945. TO WHOM IT MAY CONCERN: We, the undersigned, do agree to put a second mortgage on the property when the building on such property has been completed. To Shaw Lumber Co. Signed: Bill L. Vaughan, Irma C. Vaughan."

Between August 2, 1945, and July 11, 1946, Andrews furnished to defendants building material to the extent of $1,564.06, all of which went into the construction of the house on the premises in question. In the fall of 1945 defendants moved into the partially completed house and have occupied it as their residence ever since. On June 29, 1946, defendants executed the following written assignment to Andrews:

"For value received, we the undersigned, do hereby assign all of our rights, title and equity in lots No. four (4), five (5), six (6) and twenty three (23) in block six (6) Homewood Gardens, Lawrence, Kansas, to W. H. Andrews. Said lots now being purchased under contract from Ralph Ward.

Signed: Bill L. Vaughan,
Irma L. Vaughan."

On July 10, 1946, Ward and his wife conveyed the property in question to Andrews, and the latter, at defendants' request, paid to Ward the balance due in the amount of $600. By July 24, 1946, Andrews had furnished building material to defendants in the amount of $1,564.06, and had paid the $600 for the lots, making a total of $2,164.06. On that date Andrews and defendants executed their written "Articles of Agreement," by the terms of which Andrews agreed to convey the property to defendants upon the payment of $2,500, payable at the rate of $30 per month, with interest at five per cent per annum. Subsequent to the execution of the last-mentioned document Andrews furnished building material to the extent of $2,766.15, all of which went into the construction of the house.

Two accounts were maintained by Andrews on the books of his

lumber company with respect to the transactions with the Vaughans. One was a merchandise account, to which all desk tickets for merchandise were transferred. The last entry on this account was on January 17, 1950. The other account was a real-estate account, on which all of the $30 monthly payments were credited.

Mr. Andrews died intestate in November, 1950, and plaintiffs herein, his son and daughter, succeeded to his interests. As of the date of his death the real-estate account showed a balance due of $1,654.72.

Following his death, defendant Bill L. Vaughan went to the office of the lumber company and asked for a statement of his account. The bookkeeper worked up a combined statement of the two accounts, showing the entries and credits in chronological order. This statement included interest and money advanced by Mr. Andrews for taxes and labor on the property. It recorded a $30 payment which was made on April 4, 1951. On July 1, 1952, the lumber company sent a statement to defendant Bill L. Vaughan showing an unpaid balance due on the composite account in the amount of $4,395.63. The correctness of this figure is not challenged.

Defendant Irma C. Vaughan had no communications or transactions with Mr. Andrews or plaintiffs except for the signing of the three documents referred to and the making of the $30 payment April 4, 1951, which was credited to her husband.

We are advised that defendants are now in the throes of marital difficulties, settlement of which awaits the final disposition of this case.

As conclusions of law the court found there was a balance due under the "Articles of Agreement" in the amount of $2,393.25, and ordered forfeiture of the contract unless such balance was paid within thirty days. It further found that the agreement of defendants to put a second mortgage on the property when the building was completed, and the "Articles of Agreement," were between the same parties, related to the same subject matter, and, although made on different dates, the latter did not supersede the former and was not repugnant thereto, and that in view of all of the facts and circumstances plaintiffs had an equitable lien on the property for the amount of materials furnished and unpaid for in the amount of $2,766.15, and judgment was rendered accordingly.

In this court defendants concede that so much of the judgment as relates to the amount found to be due under the written real-

estate contract is correct, but contend that the portion of the judg-ment pertaining to the merchandise account should be reversed for a number of reasons, among them being that recovery thereon is barred by the three-year statute of limitations.

As we view this record and the questions raised, we are convinced that nothing would be added to the body of our law by treating each of the contentions raised by defendants, and that the extent of our opinion merely should be to decide this lawsuit between these litigants.

The situation presented is relatively simple. Defendants pur-chased some lots upon which to erect a house. They agreed in writing with plaintiffs' predecessor to place a second mortgage on the property when the building was completed. Apparently on the strength of this the lumber company furnished building material, all of which went into the construction of the house. Defendants moved in and have occupied it ever since. They later assigned all of their rights to plaintiffs' predecessor and the latter paid to Ward the balance of $600 owed by defendants. Subsequently the parties executed the "Articles of Agreement" heretofore referred to, and the lumber company continued to furnish building materials and supplies, all of which went into the house. The remainder of the story already has been told and will not be repeated.

While it is true that, for convenience, two separate accounts were carried on the books of the lumber company, the fact remains that all of the transactions concerned only the one subject matter—that is, the financial assistance being given by plaintiffs' predecessor in making it possible for defendants to purchase the property and erect the residence thereon. Even though it should be held that the three-year statute of limitations had any application to the situation pre-sented, the last payment, made on April 4, 1951, was well within three years prior to the commencement of the action. In one sense of the word defendants, in their separate answers, ask for specific performance of the real-estate contract, and it would be inequitable, under all of the circumstances shown, for them, on the one hand, to ask for equitable relief and, at the same time, not to do equity with respect to the other phase of the subject matter—that is, to pay the balance due on the merchandise account.

We have neither overlooked nor ignored various arguments and contentions advanced by defendants in support of their position. All have been examined and considered but are found to be without substantial merit.

From our examination of this case we are convinced that the judgment of the lower court was correct, not only as a matter of law but also from the standpoint of equity and common justice. No error being shown, the judgment is therefore affirmed.